HENRY C. ROWE *vs.* CALEB L. LUDDINGTON AND OTHERS.

The act of 1879 (Session Laws of 1879, ch. 70, sec. 3,) provides that in the case of oyster grounds in Long Island Sound, designated by the proper authorities either by special map or by reference to one in the town clerk's office, where adjoining owners shall disagree as to their dividing line, either may apply to a judge of the Superior Court, who shall appoint a surveyor who shall trace and mark out the line according to such map.   Held—

1. That it was necessary to the jurisdiction of the judge that it should be a case of adjoining ownership, and that there should be a map for the guidance of the surveyor.

2. That where there was a space of clear water between the grounds of the different owners they were not adjoining owners.

3. That a map which gave monuments that did not exist and the courses and distances of which were so erroneous that it could not be applied, was equivalent to no map.

[Argued June 21st—decided July 27th, 1883.]

APPLICATION under the act of 1879 to Judge *Sanford* of the Superior Court for the appointment of a surveyor to designate the line between adjoining owners of oyster grounds on Long Island Sound.   Surveyor appointed; report made; remonstrance by defendants against its acceptance; facts found on remonstrance and report approved; appeal by the defendants.   The case is sufficiently stated in the opinion.

*W. C. Case* and *T. M. Maltbie*, for the appellants.

*J. W. Alling*, with whom was *G. M. Gunn*, for the appellee.

PARDEE, J.   To encourage the planting of oysters the state has assigned portions of the bed of Long Island Sound to private and exclusive ownership.   Of course with this there comes the necessity for well-defined lines of separation between owners, and for methods of adjustment when they disagree.  The plaintiff says that he and the defendants are adjoining proprietors in the bed of the Sound, by designations which either contained or referred to maps thereof lodged on file in the office of the town clerk of East Haven; and that they do not agree as to the location of the line separating them and fixed by such maps and records.   The statute (Session Laws of 1879, chap. 70, p. 423,) provides as follows :—

"Sec. 2.  The preceding section shall not apply to any designation of oyster ground which contains therein a map thereof, or which refers therein to such map lodged on file in the town clerk's office.

"Sec. 3.  In such cases as described in section two, if the owners of the adjoining grounds do not agree as to the location of the line fixed by such maps and records, or if the boundary between such owners is a town boundary and they disagree as to the same, one or more of such owners may apply to any judge of the Superior Court of the county in which the town is situated where either of the designations is recorded, and such judge, after giving six days' notice to the parties interested, shall appoint a surveyor, who shall take such map or maps, and lay out and survey such lines according to such maps, and, in case of a town boundary being in question, he shall locate such boundary by maps or records, in the custody of the town clerks of such towns, of such boundaries or of perambulations thereof.   All the lines which he shall so locate shall be marked by stakes or buoys, and he may employ needed assistance in his proceedings, and shall make report of all his doings to the judge, who shall, if approved, cause the same to be recorded, in the towns where any of the grounds are situated, on the oyster ground records; and if he shall not approve of such report, he shall appoint another surveyor,

who shall proceed in the same manner as hereinbefore described. The line so established shall thereafter be the true dividing line between such grounds. The costs of such proceedings shall be equally divided among the adjoining owners."

The plaintiff asked for such surveyor; one was appointed, acted, and reported; the Superior Court accepted his report, and established a separating line. The defendants appeal.

The following extract is taken from the report:—" The designation maps Nos. 1 and 3 are puzzles, geometrically impossible in themselves, and calculated to mislead by reason of their shape, and partly by their wording. Their only consistent solution can be reached by examination and comparison of the individual parts of each, with a replot by the indicated angles where, as in the case of No. 1, courses and distances are sufficiently given by comparison of the evidently intended corresponding parts of the several designations, with reasonable explanation and reconcilement of apparent discrepancies, and their accurate plotting in relation to each other, to the meridian, and to definite fixed objects in a correct map of the whole vicinity. * * The map drawn by a surveyor, as saith the manuscript part of the designation, purports to be drawn to a scale of 200 feet to the inch, but the line $F\,G$, given as 277 feet, is the only one approximating to that scale; while $E\,F$, given as 1375 feet, nearly corresponds to a scale of 400 feet to the inch; $D\,E$, given as 936 feet, approximates to a scale of 300 feet; the line $C\,G$, given as 1880 feet, is drawn close to a scale of 400 feet to the inch; (if it was ever intended that the distance 1880 feet was meant for $D\,G$ and not $C\,G$, the nearest it comes to it is 1780 feet, and that by a scale of 500 feet to the inch;) the line $B\,C$, given as 920 feet, has for its nearest approximation, among the scales ordinarily used by surveyors, 300 feet to the inch; and the line $A\,B$, given as 2270 feet, is just about such by a scale of 400 feet to the inch. Such being the facts, the shape of the outline entirely fails to represent the indicated angles and distances. * * The above are some of the discrepan-

Rowe *v.* Luddington.

cies and difficulties, to remove which and come at correct conclusions I have applied myself. I have made a careful survey of the vicinity and drawn a map, which is presented herewith, in which map, drawn to a scale of 200 feet to the inch, I have located, after much study, the oyster lots in question, in their proper relation to each other, to the meridian, and to fixed objects."

The court finds that "exhibits Nos. 1, 2 and 3 represent copies from the records of the several designations in question, and also tracings made by the surveyor of the maps in said designations, from the records thereof. The original of exhibit 1 was produced at the hearing on the remonstrance and is annexed hereto. On said exhibit No. 1, and on the original of that exhibit, the north line appears to stop at the spindle on Quixes Ledge on the northeast and run through and stop near the limit of Old Head's Reef on the northwest. It appears from the report of the surveyor and the testimony before me, that the north line of said No. 1, as established by the survey or at its northwest corner, is 275 feet distant from Old Head's Reef. This reef is irregular in shape, some 900 feet long, and runs in a direction different from that indicated on exhibit 1, or its original, and is always under water even at low tide. In said original the line through the reef and the spindle is described as in the range towards Two Tree Island. The spindle consists of an iron post of considerable height, erected on what is called Quixes Ledge, the post being surmounted by a barrel, and is a fixed, permanent and visible object. No line running through the spindle and Two Tree Island will touch Old Head's Reef or any part thereof. The defendants claimed that the surveyor should have made Old Head's Reef, or a point thereon, one of the corners of ground owned by them. The court overruled the claim and the defendants excepted. It appears from the report of the surveyor that the lands of plaintiff and defendants do not in fact adjoin each other, and are separated throughout by a space of clear water, and are distant from each other, at the south corner 72 feet, and at the north end 260 feet."

The effect of the report and finding is that there are errors in the maps; that the lots are not accurately represented thereby; and that the surveyor proceeded to survey the premises, draw maps, and designate lines, correcting supposed errors, without notice to the parties.

The statute permitting the designation of a separating line by a surveyor without hearing rests upon the supposition that there exists a map upon which that line is drawn with absolute accuracy as to courses and distances; and that nothing remains for him except to transfer that map to the surface of the water, and thus make the line plain to the disputants. In other words, by the exercise of professional skill he is to find in the sound the monuments designated upon the map. The statute does not empower him, in the absence of the parties, upon his own motion, either to establish new monuments, change courses, or vary distances. If neither the monuments nor the lines constituting the map exist as described, there is in the eye of the law no map; and whenever the court finds the jurisdictional averment that there is one not proven, the petition must be dismissed.

Again, the statute proceeds upon the idea that the plaintiff and defendant are adjoining owners; that a line designated upon a map and sought for on the Sound separates them. When the court finds the jurisdictional averment of adjoining ownership not proven, the petition must be dismissed.

There is error in the judgment complained of.

In this opinion the other judges concurred.